MEMORANDUM OF DECISION
Joshua M. was born in Springfield, Massachusetts on May 3, 1989. He was committed to the Department of Children and Youth Services (DCYS) as an uncared for/homeless child on May 4, 1990. The parental rights of the child's natural mother were terminated by this court on August 22, 1990. A petition to terminate the parental rights of the father named on the birth certificate was filed December 10, 1992; the named father is listed on the petition as Michael David M., with his whereabouts shown thereon as "unknown."
The instant petition alleges three statutory grounds for the termination of the father's parental rights: CT Page 4435 abandonment, acts of commission or omission, and no ongoing parent-child relationship.
Notice
It has been indicated that the mother of the child and Michael David M. were legally married at the time of the birth of Joshua M. The mother reported that Michael David M. was not the father of the child and actually identified another person as the father; she stated, however, that Michael David M.'s name was on the birth certificate since at the time Joshua was born, she was married to Mr. M. When the DCYS social worker obtained the child's birth certificate, it contained the name of Michael David M. as the father of the child.
Although the instant petition shows the father as whereabouts "unknown", the agency filed with the petition a motion for an order of notice reciting that the father was last known to be residing (at an unknown address) in New Britain. The motion was granted and legal publication ran in the New Britain Herald on December 19, 1992 regarding the January 5, 1993 hearing on this petition. Said publication is hereby found and confirmed.
Also on December 10, 1992, petitioner filed another motion for an order of notice reciting that the father was last known to be residing (at an unknown address) in Southold, New York. Accordingly, notice was ordered in Newsday, "a newspaper having a circulation in the city of Southold" and a legal advertisement ran on December 21, 1992 respecting the January 5, 1993 hearing. Said publication is hereby found and confirmed.
At the January 5, 1993 hearing, the named father did not appear; the court appointed an attorney to represent him.[2]
The court also directed DCYS to make further efforts to locate the father, particularly through authorities (and possibly relatives) in Southold, New York, and through the Department of Income Maintenance.
The matter came back before the court on February 16, 1993, at which time it was reported that neither DCYS nor the assigned attorney was successful in locating, or contacting, the father or any members of his extended family. However, CT Page 4436 DCYS had obtained from DIM an old address for the father in Dayton, Ohio. Counsel for the father reported that DCYS had furnished him with the Dayton address and, on February 2, 1993, he had sent certified and regular mail letters to the father in Dayton advising him of the nature of the proceeding, of the February 16, 1993 court hearing, and instructing father to contact him immediately. On February 16, the father again did not appear and the attorney (and DCYS) stated that the father had not been in contact. However, the receipt for the certified mailing had not been returned; therefore, the case was continued to March 23, 1993 for that purpose, and further, the court ordered publication in a Dayton newspaper. The case was continued to March 23, 1993.
On March 23, counsel for the father again reported that letters sent to the old Dayton address had not been responded to. However, the letter sent regular mail had not been returned, while the certified mailing was returned checked "Unclaimed." Documentation in the official court file established that publication regarding the March 23, 1993 hearing ran in the Dayton Daily News on February 27, 1993. Publication in the Dayton newspaper is hereby found and confirmed.
It is hereby found that constructive notice has been effected in accordance with the requirements of law; General Statutes Section 45a-716(c); and, that reasonable efforts have been made to locate the father named on the birth certificate. There exists a jurisdictional basis for proceeding on the instant petition in this court.[3] A default is hereby entered with respect to the named father.
Factual Findings Re Adjudication
The undisputed evidence and documentation before the court establishes, clearly and convincingly, the following.[4]
The father, Michael David M., was informed of Joshua's birth by the child's half-sister and has never contacted DCYS to see, or to visit with, the child, and has never offered any permanent plan for Joshua. The child was born following a gestation period of twenty-four weeks, weighed one pound, nine ounces at birth, and tested positive for a number of infectious diseases. According to hospital records, there was a history of parental intravenous drug abuse and the CT Page 4437 child was born presenting "a host of life-threatening medical problems"; therefore, Joshua remained in a Springfield, Massachusetts hospital until his transfer to New Britain General Hospital on August 9, 1989. On August 25, 1989, the hospital social worker made a referral to DCYS; at that time the baby was ready for discharge, the mother was homeless, and there had not been sufficient contact by the parent(s) to ensure that adequate care could be provided to meet the child's many needs. Accordingly, DCYS obtained an OTC on or about August 31, 1989, and the child was discharged from the hospital directly to the agency; Joshua has remained in continuous foster care. The named father has had no contact with the child since birth, has never provided any care for Joshua, has not offered any plan, and has not contributed to the financial support of this child.
Adjudication
a) Abandonment
Based on the aforestated facts, it is concluded that petitioner has established statutory abandonment. It is hereby found, applying a clear and convincing evidence standard, that the named father, Michael David M., has abandoned his son, Joshua M.; that is, the said father has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the said child. It is further found, by clear and convincing evidence, that said ground for termination for parental rights has existed for an extended period of time, preceding the filing of this petition, of not less than one year.
b) Acts of Commission or Omission
The petition alleges, as a statutory ground for termination, that Joshua M. has been denied by reason of act or acts of commission or omission, on the part of the named father, the care, guidance, or control necessary for the child's physical, educational, moral, or emotional well-being. As stated, Joshua M. was placed in the custody of DCYS immediately upon his discharge from New Britain General Hospital following birth; he has remained in DCYS placement continuously since leaving the hospital. The commitment of the child to DCYS was as an uncared CT Page 4438 for/homeless child; the child was not adjudicated neglected or abused. With reference to this statutory ground for termination of parental rights, the Appellate Court has ruled that termination is to be predicated upon clear and convincing proof of specific acts of parental commission or omission which have caused serious physical or emotional injury to the child. In re Kelly S., 29 Conn. App. 600, 614
(1992). The court has stated: ". . . the termination of parental rights . . . where a child has been denied necessary care, guidance or control by reason of parental acts of commission or omission . . . requires proof of specific conduct that has caused serious injury to the child." Id. at pp. 615-16. In the instant case, the information before the court does not establish any specific acts of commission or omission by the named father which have resulted in any serious physical or emotional injury to the child, Joshua M. As stated, the father has had no contact with the child who has been in DCYS custody since shortly after his birth.
It is hereby found that the second ground alleged in this petition has not been established by clear and convincing evidence; accordingly, the second alleged ground (acts of commission or omission) may be, and hereby is, Dismissed.
c) No Ongoing Parent-Child Relationship
As a third ground, the instant petition alleges that there exists no ongoing parent-child relationship between the named father and the child, which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child, and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interest of the child.
As stated, this child has been in DCYS custody since birth. Our Supreme Court has repeatedly recognized that the statutory definition of an ongoing parent-child relationship "is inherently ambiguous when applied to noncustodial parents who must maintain their relationship with their children through visitation." In re Valerie D., 223 Conn. 492, 531
(1992); In re Jessica M., 217 Conn. 459, 467-68 (1992). With regard to this termination ground, the ultimate question CT Page 4439 is whether the child has no present memories or feelings for the natural parent, or in the case of an infant child, the positive feelings of the natural parent. In re Valerie D., supra at pp. 531-32. Here, the named father had no contact with the child between May 3, 1989 (date of birth) and December 10, 1992 (filing date), although he was made aware of the child's existence. Thus, as of the latter date (12/10/92), Joshua M. could have no memories of, or feelings toward, his biological father. Similarly, there is absolutely no factual basis on which to infer any positive feelings on the part of the father toward this child. Accordingly, it is concluded that there exists no ongoing parent-child relationship between Michael David M. and his son, Joshua M.
The father has had no contact with Joshua for a period of time approaching four years; he has remained whereabouts unknown and cannot be located. No parent-child relationship between father and son has ever been established. Given the protracted period the child has been in DCYS placement, permanency is clearly consistent with Joshua M.'s best interests. To permit the passage of further time for the establishment or re-establishment of a parent-child relationship, when the father has never seen the child, or contacted DCYS concerning the child, in the over three and one-half years from the child's birth, would be inconsistent with, and detrimental to, the best interests of Joshua M., which interests require permanency and certainty.
It is hereby found, applying a clear and convincing evidence standard, that petitioner has established that there exists no ongoing parent-child relationship between Michael David M. and his son, Joshua M., and that to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child.
Disposition
A petition to terminate parental rights may be granted only upon a showing, based upon clear and convincing evidence, that termination is in the best interest of the child. Additionally, the court must consider the six statutory factors outlined in General Statutes Section17a-112(d).
Additional Factual Findings Re Disposition CT Page 4440
Joshua M. was placed by DCYS in his current home on August 2, 1991. The child is physically healthy; although Joshua had received remedial speech therapy, the speech therapist determined that it is no longer necessary. Joshua M. attends day care, is a friendly and outgoing child, is very attached to the foster parents, and has a full, happy life. The foster parents intend to adopt Joshua if he is freed for adoption, and that is DCYS' plan.
Best Interests
The child has been in DCYS placement his entire life; permanency and certainty in a good, sound home situation are clearly in this child's best interests. Petitioner has established, applying a clear and convincing evidence standard, that termination of the parental rights of the named father, Michael David M., thereby freeing this child for adoption, will serve the best interests of Joshua M.
Six Statutory Considerations
(1) Services to facilitate reunification with the father named on the birth certificate could not be put in place by DCYS since the father's identity was initially unknown to the agency, and his whereabouts have remained unknown to date. Although the father had been informed of the birth of this child, he never contacted DCYS.
(2) There is no evidence that any court orders were entered into and agreed upon, or of non-compliance with any such orders, by any of the parties hereto.
(3) The named father has had no contact with the child; thus, there is no basis for concluding that Joshua M. has any feelings for, or emotional ties with, the father. Joshua M. has been placed in the present foster home since August 2, 1991; the child is attached to, has feelings for, and has emotional ties with, his foster/pre-adoptive parents.
(4) The child is three years, eleven months old. In view of Joshua M.'s age, the fact that he has been in DCYS placement for his entire life, and considering the named father's lack of contact with, and interest in, the child, permanency through the adoption process is entirely CT Page 4441 consistent with the best interests of Joshua M.
(5) The named father has had no contact with the child (although informed of the child's birth), has never communicated with DCYS concerning the child, has never presented a plan for Joshua M., has not contributed toward the support of the child, and has remained whereabouts unknown. Therefore, there is no indication that Michael David M. has made any effort to adjust his circumstances, conduct, or conditions to make it in the best interest of Joshua M. to return to the father's home in the forseeable future.
(6) There is no evidence that the named father has been prevented from establishing and/or maintaining a meaningful relationship with Joshua M. by the unreasonable act or conduct of the other biological parent of the child, or the unreasonable act of any other person (or of any agency), or by the father's own economic circumstances.
Petitioner has met its burden of proof by clear and convincing evidence; the best interests of the child will be served by freeing him for adoption, and by the provision of a devoted, nurturing, permanent home.
It is found, applying a clear and convincing evidence standard, that termination of the parental rights of the named father is in the best interests of Joshua M., and, that with respect to the said father, over an extended period of time which is not less than one year, statutory grounds have existed for the termination of the said father's parental rights.
The petition to terminate the parental rights of Michael David M. to the child, Joshua M., is hereby Granted; and the Commissioner of the Department of Children and Youth Services shall continue to serve as the child's Statutory Parent. A case plan report shall be submitted to this court by DCYS in conformity with the requirements of General Statutes Section 17a-112(i).
Mulcahy, J. CT Page 4442